Cox, J.
The petition in this case was filed to compel the specific performance of a contract signed by Laura J. Nichols and her husband, to convey to plaintiff, in consideration of $18,500, a tract of land in Hamilton county, Ohio, which was the separate estate of the wife.
The contract was made on the 20th of August, 1885, and signed by both husband and wife. Five hundred dollars of the consideration was alleged to have been paid to defendants at the'date of the contract. The remainder of the purchase-money was to be paid, $7,000 on the first of March, 1886, the date of the delivery ofthe deed; the balance in six notes of $1,000 each, bearing interest payable in one, two, three, four, five and six years, and secured by a mortgage on the premises.
*409 The petition alleges that Laura J. Nichols now denies she has made such contract of sale, repudiates the same as far as she can, will not perform it, and threatens to, and will, unless énjoined by this court, sell and convey the premises to other persons unknown to plaintiff, before the first day of March, 1886, and has entered into negotiations to that end, being induced thereto by expectatiodof getting a higher price than the above amount; that the defendants are about to remove from this county, where they have resided for many years, to the state of Indiana; that said Laura J. Nichols has no other property except the premises sold to plaintiff. Plaintiff asks that she be enjoined from conveying the property to anyone else, and that the court upon a hearing of this case find that she made a contract of sale; that a decree of the court be made binding upon defendants, and that they be ordered to perform the contract at the time named by executing and delivering a deed to him upon payment of the money and the execution and delivery of the notes and mortgage mentioned in the contract.
To this petition a demurrer was filed, and also an answer.
The case was heard upon the questions of law as well as the •questions of fact.
The answer admits that the contract was signed, but denies that it was acknowledged by the wife separate and apart from her husband; denies all liability upon it; says it was not her voluntary contract, and offers to tender back the money already paid.
There is also an amended petition alleging that upon the first of March, the time when the amount of the purchase-money became due, the first payment was tendered, and also the notes and mortgage for deferred payments, and a deed demanded, which was refused.
The sole question in the case is, whether a married woman can be compelled to execute a contract in writing, made jointly with her husband, to convey her separate real estate, the contract not being in the shape of a deed, and there being no acknowledgment separate and apart from her husband.
The law in Ohio upon the rights and obligations of a married woman as to her separate property has been continually chang *410 ing and progressing for the last twenty-five years towards one point, and that is, to hold her liable upon all her contracts as if she were a feme sole. The first act passed in 1861, familiarly known as the Keys Act, provided that property which came to her during coverture by conveyance, gift, devise, or inheritance, or purchased by her separate money or means, together with all the rents and issues thereof, should be and remain her separate property and under her sole control, and that in her own name during coverture she could lease the same for any period not exceeding three years, and her personalty was placed under her sole control except where the property had been reduced to the possession of the husband with the assent of the wife. :
The act of March 80,1874, provided that in an action which concerned her separate property, or upon any written obligation, agreement or contract, signed by her, or action brought by her to set aside a deed or will, it was not necessary to join her husband in the action, but it could be prosecuted in her own name, “ and in all cases where she may sue or be sued alone, like proceedings shall be had, and like judgment had and enforced in all respects as if she were an unmarried woman ; ” that in every such case, her separate property and estate should be liable for any judgment rendered therein against her, to the same extent as would the property of her husband, were'the judgment against him; giving, however, the benefit of the exemption laws of the state.
Under this legislation the case of Phillips v. Graves, 20 Ohio-St., 371, was decided, which held that a “ married woman possessed of a separate estate in real or personal property may charge the same with her debts, at least to the extent that such debts may be incurred for the benefit of her separate estate, or for her own benefit, upon the credit of her separate property,” and, “ her intention to charge her separate property at the time may be either expressed or implied; ” that such intention may be inferred from the fact that she executed a note or other obligation for the indebtedness, and that courts of equity will énforce the payment-of such charges against her separate estate through a receiver, 1st, by appropriating her personal property; 2d, by sequestering the rents and profits of *411 the realty; and, 3d, by sale of the realty when the same is necessary; that the jurisdiction of courts of equity in this behalf is not abridged or taken away by the operation of the statutes “ concerning the rights and liabilities of married women;" and that the statute providing “for the proof, acknowledgment and recording of d'eeds and other instruments of writing,” is not incompatible with the equitable power of a married woman to charge her separate estate with debts incurred within the scope of the rule.
The court say, on page 385: “We find the English rule to be, that courts of equity upon the principle that the jus disponendi is an incident to the absolute ownership of property, will charge the separate estate of a married woman with the payment of debts arising upon her general engagements, whether verbal or in writing, when her intention so to charge them is either expressed or implied.”
Following this is the case of Jenz v. Gugel, 26 O. St., 527, in which the court hold that “ section 28 of the civil code, as amended March 30, 1874, was not intended to enlarge or vary the liabilities of a married woman, but merely to change the form of the remedy,” and that “ no recovery can be had against a married woman upon her promissory note, whether executed before or after the date of said amendatory act, unless it appear that she has separate property subject to be charged therewith.”
In Avery v. Vansickle, 35 O. St., 270, it was held that in proceedings to subject the estate of a married woman to the payment of a promissory note executed by her, neither party is entitled to demand a trial by jury; that in an action to foreclose a mortgage executed by husband and wife to secure the payment of the wife’s promissory note, constitutes no bar to a subsequent action to subject the separate estate of the wife to the payment of a deficiency arising upon the sale of the property mortgaged.
In Williams v. Urmston, 35 O. St., 296, it was held that a married woman having a separate estate, may charge the same in equity by the execution of a promissory note as surety for her husband; and that the execution of such promissory note raises a presumption that she intends to charge her separate *412 estate'with its payment, and a court of equity will carry such intention into effect by subjecting such estate to the payment of her debt in the mode prescribed by the statute, overruling Levi v. Earl, 30 O. St., 147, and Rice v. Railroad, 32 O. St., 380, in so far as they conflict with the decision of this case.
In Patrick v. Littel, 36 O. St., 79, it was held that the separate estate of a married woman is chargeable with the performance of her engagements or obligations made Or incurred upon its credit or for its benefit, and an agreement bjr her to pay for services to be rendered' in procuring a loan of money to remove a mortgage from such estate, is an agreement upon its account and for its benefit.
The court on page 82 of this decision say: “A married woman to the extent of her power of disposition over her separate estate, may charge it with such engagements as she sees .fit to make. If subjected to no imposition, a fact always'to be determined in view of the relation she sustains to the parties to the transaction, in connection with its nature and subject-matter, she may charge the property to the extent she might bind 'herself at law, were she sui juris, unless in so doing she •exceeds some limitation upon her power of disposition,” •citing Pollock on Contracts, 73.
And further: “ there is now no limitation upon her power to bind her estate to the discharge of liabilities created on account thereof, where the estate is acquired under the •statute.”
In Gerlach v. Redinger, 40 O. St., 388, a married woman sold and conveyed her separate real estate by warranty deed. She joined her husband in the covenants of the deed in which they warranted and defended the same against the claims of all persons whomsoever. Two valid liens, tax and mechanic’s liens, existed upon the real estate at the time of the execution of the deed, and the court held that by the covenants so worded she charged her separate estate with the removal of the incumbrances, and the grantee was entitled to have the sums paid by him to discharge them, deducted from the unpaid purchase-money.
In opposition to the claim that she was so liable, it was -contended by counsel that a married woman is not liable in *413 damages for the breach of the covenants of her deed upon the authorities of Hill v. West, 8 O. St., 223; Rosenthal v. Mayburgh, 33 O. St., 159; Kelley’s Cont. Married Women, 103, and cases-.cited, and I Bishop on Married Women, 603. But the court-say : “ In the contract for the sale and conveyance of her separate real estate, witnessed by the deed of conveyance, with its covenants peculiarly worded, Eliza Redinger agreed that her separate property should be charged with the payment of all liens that were upon the real estate at that time. This was just as much a part of the contract as was Gerlach’s promise to pay a part of the purchase-money at a future date. * * * * The recent decisions of the supreme court of Ohio have tended to enlarge the rights of married women in regard to their separate estates, and consequently increased their liabilities. Our conclusion in this case is in harmony with the spirit of these decisions.”
But in Murdock v. Lantz, 34 Ohio St., 589, a case decided in 1878, it was held that where a married woman, seized in fee of an ancestral estate, joins with her husband in a written agreement to exchange her estate for other property, and dies before the execution of deeds of conveyance, leaving her husband and brothers and sisters, but no children, surviving her, the ancestral estate will pass to, and vest in, the brothers and sisters, subject to the life-estate of the husband. The court say: “ That by reason 'of her coverture the agreement as to-her was absolutely void. In respect to such agreements as the one under consideration, the disability of a married woman has in no wise been removed by our legislation. The contract being void, she did not, thereby, part with any interest in the land.”
Under these decisions and the law as enacted by the legislature, a married woman could contract a debt, bind her separate estate, real or personal, and a court of equity would enforce the payment of it by a sale of her property, real or personal, and by its decree, would vest in the purchaser a good title. But in the case of Murdock v. Lantz, supra, it was held that she could not make a contract to convey her separate estate which would be enforced in equity; and upon that authority we should be compelled to hold that this contract *414 could not be enforced in this case. But since that decision the legislature has still further, as we conceive, in consonance with the progressive idea of all the laws enacted upon that subject to confer the rights and impose the liabilities of a feme sole upon a married woman, enacted the law (81 O. Laws, 65, amending Secs. 4996 and 5819, Rev. Stats., passed March 20, 1884,) providing that a “ married woman shall sue and be sued as if she were unmarried, and her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband.”
Section 5319: “ When a married woman sues or is sued, like proceedings shall be had and judgment rendered and enforced as if she were unmarried, and her property and estate shall be liable for the judgment against her, but she shall be entitled to the benefits of all exemptions to heads of families.”
Another act was passed affecting the separate property of the wife (81 O. L., 209, passed April 14, 1884), providing, Sec. 3108: “Any estate or interest, legal or equitable, in real or personal property, including rights in action belonging to a woman at her marriage, or which may come to her during coverture by conveyance, gift, devise or inheritance, or by purchase with her separate money or means, or due as the wages of her personal labor, or growing out of any violation of her personal rights, shall, together with the rents, incomes, issues and profits thereof, be and remain her separate property.”
Sec. 3109 especially provides that the “ separate property of the wife shall be under her sole control, and shall not be taken by any process of law for the debts of the husband, or be in any manner conveyed or incumbered by him, and she may in her own name during coverture, contract to the same extent, and in same manner as if she were unmarried.”
Sec. 3112 provides that “ Secs. 3108 and 3109, shall not affect any of the provisions of Secs. 4106, 4107, 4108 and 4176, nor any rights which vested prior to May 1, 1861.”
The question is, has the legislature by these recent acts changed the liability of the wife, and given her suchyas disponendi of her real estate as that she may be held liable for her contract to convey, when made in writing in conjunction with *415 her husband? The terms of the amended Sec. 3109 are very full and general, that she may in her own name during coverture contract ato the same extent and in the same manner as if she were unmarried.”
This law is limited, however, by a subsequent amendment. (82 Ohio L., p. 131, passed April 16, 1885.) Sec. 3108 by that amendment provides that she may “ without the consent of her husband lease her real estate for any period not exceeding three years.”
We have, then, the'se two laws to consider. First, the law of 1884, giving a married woman absolute control over her property, to contract “ in the same manner and to the same extent as if she were unmarried,” and the subsequent statute of April 16, 1885, providing that she may, “ without the consent of her husband, lease her real estate for any period not exceeding three years.”
Now, if it were not for this last statute, we think it would be clear that she could make any contract in reference to her real estate in her own individual name just as if she were a feme sole. But this last statute requires that any lease beyond the term of three years must be with the consent of her husband, and from this we think, it is clearly inferable that while she has the general control and management of her property, as if she were a feme sole, whenever she attempts to make leases beyond three years or exercises any rights of lease over her property which shall extend beyond,that period, it must be with the consent of her husband. She may, therefore, under this last statute, with the consent of her husband lease her separate property for a term of years or perpetually, (which is substantially under our laws a conveyance in fee).
How far is this act controlled by Sec. 3112 of the act of April 14, 1884? That law provides that the provisions of sections 3108 and 3109 shall not affect the provisions of sections 4106, 4107, 4108 and 4176. These are the sections of the deeds’ act, which provide that when a deed, mortgage, or other instrument of writing, in which any land, tenement, or heriditament is conveyed or otherwise affected or incumbered in law, such instrument shall be signed and sealed by the grantor or maker and acknowledged in the presence of two witnesses before an offi *416 cer authorized tó acknowledge it; that it shall be signed and sealed by the husband and wife, and that the wife shall be examined separate and apart from her husband, and the contents of the deed shall be read or otherwise made known to her, and shall be duly acknowledged, etc.
But we do not think that these exceptions interfere with the right to make the contract to convey. They are simply in reference to the mode of conveying the- legal title. They are as necessary now as they were before. Before a deed can vest the legal title of the husband and wife in a grantee, that deed must be acknowledged as the law provides; but it in no manner affects a contract to convey. That is binding upon the grantor without acknowledgment. And so while the legal title of tne wife to her separate property must be conveyed according to the terms of the statute, in the mode and manner provided in the statute, yet there is nothing in this exception to interfere with her power to agree to convey, and she would be subject to this agreement as any other person would, who had made a contract to convey property. While the court could not compel her to acknowledge before an officer that it was her voluntary act and deed, and this acknowledgment to be made separate and apart from her husband; while courts can not compel the husband to acknowledge a deed, yet when they come to enforce a contract for the specific performance, they require, as is the usual custom, the parties to execute a deed in conformity with the statute, and if not executed, a decree of the court would stand as such deed. This would be the form of decree under all the former decisions of this state. Wheré the wife made a note or any contract to bind her separate estate, and it was sought in equity to charge that upon her separate estate, and to sell it, while the court could not compel her to execute a deed to the purchaser, it could direct the property to be sold, and the officer who sold it to give a deed to the purchaser, which would be as effective as if signed, sealed and acknowledged by the husband and wife, under the statute, before the proper officers.
The question is not without very great difficulty in view of the former law and the decisions of the courts, but we think the tendency of all the decisions, not only of our own courts, *417 but of other states and countries, is toward this point, to place the wife, as to the disposition of her real estate and personal property, in the same position as if she were a feme sole. And especially is this so under the provisions of the law of 1884, which it seems to us could'not have been enacted for any other purpose than to extend her power of disposition of her property beyond that which was held in the case of Murdock v. Lantz, supra.
Moadly, Johnson & Colston and Wallace Burch, for plaintiff.
Disney & Collins, for defendant.
But this same question has been passed upon by other courts whose decisions and the reasons given therefore are entitled to respect. In Koch v. Seifert, Ham. Co. Com. Pleas., 18 Law Bull., 15, it was held that a married woman may bind herself to the same extent and in the same manner by contract as if she were unmarried, and the same ruling has been made in City National Bank v. Holden, Montgomery Co. Com. Pleas, 14 Law Bull., 399, by a very able judge.
The decree will therefore be, that the defendants upon the payment to them of the amount specified in the contract, and the execution of the notes and mortgage, convey the property to the plaintiff within ten days, and in default thereof, upon the payment by plaintiff of the amount of money to the clerk of this court, and the execution of the notes and mortgage, that the decree of the court operate as a conveyance to him of the property.
Swing, J., dissented.
[Exceptions were taken to the judgment, but the case was settled between the parties on the basis of the decree.]